# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RICHARD MAIERLE,

       Plaintiff,

                                          Case No.

v.                                      Hon.

CHARTER TOWNSHIP OF CLINTON,
SUPERVISOR ROBERT CANNON, and the
CLINTON TOWNSHIP FIRE AND POLICE
RETIREMENT  SYSTEM BOARD OF
TRUSTEES, Jointly and Severally,

       Defendants.

_____/

| | |
|---|---|
| Gasiorek Morgan | Shifman Fournier |
| Sam Morgan (P36694) | Brandon Fournier (P76968) |
| Angela M. Mannarino (P72374) | Howard L. Shifman (P27040) |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 30500 Northwestern Highway, Suite 425 | Clinton Township and Supervisor Cannon |
| Farmington Hills, MI 48334 | 31600 Telegraph Road, Suite 100 |
| 248.865.0001 | Bingham  Farms, MI 48025 |
| smorgan@work-lawyers.com | 248.594.8700 |
| amannarino@work-lawyers.com | hshifman@shifmanfournier.com |
| | bfournier@shifmanfournier.com |

VanOverbeke,  Michaud & Timmony, P.C.
Michael VanOverbeke (P42641)
Attorney for Defendant Clinton Township Fire
And Police Retirement System Board of Trustees
79 Alfred Street
Detroit, MI 48207
313.578.1200
mvanoverbeke@vmtlaw.com

_____/

## NOTICE OF REMOVAL

TO:   Clerk of the Court

U.S. District Court
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd.
Detroit, MI 48226

Clerk of the Court
Macomb County Circuit Court
40 N. Main St.
Mt. Clemens, MI 48043

Sam Morgan
30500 Northwestern Hwy., Ste 425
Farmington Hills, MI 48334

Michael VanOverbeke
79  Alfred St.
Detroit, MI 48207

PLEASE TAKE NOTICE that Defendants, Charter Township of Clinton, Supervisor Robert Cannon and Clinton Township Fire and Police Retirement System Board of  Trustees, have hereby removed the above-entitled cause of action from the Macomb County Circuit Court to the United States District Court for the Eastern District of Michigan, Southern Division, pursuant to the provisions of 28 U.S.C. §1446 *et. seq*. In support of their removal of the above-entitled cause of action, the Defendants respectfully represent the following information:

1.      On June 1, 2021, Plaintiff Richard Maierle filed his Complaint in the Macomb County Circuit Court, which was designated Case No. 21-001895-CD and is now pending in that court. (**Exhibit A**, Complaint). Further, the Plaintiff's Complaint was partially predicated upon the Age Discrimination in Employment Act of 1967 (ADEA).

2.      Pursuant to the allegations of paragraph 2 of the Plaintiff's Complaint, Richard Maierle is a Michigan resident of Macomb County, Michigan.

3.      Pursuant to the allegations of paragraph 3 of the Plaintiff's Complaint, Charter Township of Clinton is a public corporate body located within the County of Macomb, State of Michigan.

4.      Pursuant to the allegations of paragraph 10 of the Plaintiff's Complaint, Clinton Township Fire and Police Retirement System Board of Trustees is a public corporate body created and charged with the general powers and duties provided under the provisions of the  Fire Fighters and Police Officers Retirement Act, MCR § 38.551, et. seq., as amended.

5.      Pursuant to the allegations of Paragraph 7 of the Plaintiff's Complaint, Robert Cannon is the Supervisor of Clinton Township and is a resident of the Charter Township of Clinton, County of Macomb and State of Michigan.

6.      That the above-titled action is a civil action wherein the Plaintiff is claiming a violation of Age Discrimination Act in Employment of 1967 and the Elliot-Larsen Civil Rights Act (ELCRA).

7.      That this Court has original jurisdiction of the above-entitled cause pursuant to 28 U.S.C. §1331 and this action may therefore be removed to this Court pursuant to 28 U.S.C. §1441, *et. seq* because of the Plaintiff's ADEA claim.

8.      That this Honorable Court has supplemental jurisdiction over the Plaintiff's

ELCRA claim under 28 U.S. Code § 1367.

9.      This Notice is being filed with this Court within thirty (30) days after service

of the Summons and Complaint upon Defendant Charter Township of Clinton and Robert

Cannon in the above-entitled action.

10.      Written Notice of Filing this Petition of Removal and Notice of Removal has

been sent to all parties.

11.      A copy of the Notice of Removal has been filed with the Clerk of the Court

for the Circuit Court for the County of Macomb, State of Michigan.

WHEREFORE, Defendants Robert Cannon and the Charter Township of Clinton

prays that this Honorable Court grant this Petition for Removal.

                        Respectfully submitted,

                        SHIFMAN FOURNIER

        By:      _____
                        HOWARD L. SHIFMAN (P27040)
                        BRANDON FOURNIER (P76968)
                        Attorneys for Defendants Township and Cannon
                        31600 Telegraph Road, Suite 100
                        Bingham Farms, MI  48025
                        hshifman@shifmanfournier.com
                        bfournier@shifmanfournier.com

VANOVERBEKE, MICHAUD & TIMMONY, P.C.

By: _Michael VanOverbeke u/permission_

Michael VanOverbeke (P42641)
Attorney for Defendant Clinton Township Fire
And Police Retirement System Board of Trustees
79 Alfred Street
Detroit, MI 48207
313.578.1200
mvanoverbeke@vmtlaw.com

Dated:  June 30, 2021

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RICHARD MAIERLE,

        Plaintiff,

v.                                                                Case No.
                                             Hon.

CHARTER TOWNSHIP OF CLINTON,
SUPERVISOR ROBERT CANNON, and the
CLINTON TOWNSHIP FIRE AND POLICE
RETIREMENT  SYSTEM BOARD OF
TRUSTEES, Jointly and Severally,

        Defendants.

_____/

Gasiorek Morgan                              Shifman Fournier
Sam Morgan (P36694)                          Brandon Fournier (P76968)
Angela M. Mannarino (P72374)                 Howard L. Shifman (P27040)
Attorneys for Plaintiff                      Attorneys for Defendants
30500 Northwestern Highway, Suite 425        Clinton Township and Supervisor
Cannon
Farmington Hills, MI 48334                    31600 Telegraph Road, Suite 100
248.865.0001                                 Bingham  Farms, MI 48025
smorgan@work-lawyers.com                     248.594.8700
amannarino@work-lawyers.com                  hshifman@shifmanfournier.com
                                             bfournier@shifmanfournier.com

VanOverbeke,  Michaud & Timmony, P.C.
Michael VanOverbeke (P42641)
Attorney for Defendant Clinton Township Fire
And Police Retirement System Board of Trustees
79 Alfred Street
Detroit, MI 48207
313.578.1200
mvanoverbeke@vmtlaw.com

_____/

## PETITION FOR REMOVAL

NOW COME the Defendants, Robert Cannon and The Charter Township of Clinton, by and through their attorneys, Shifman Fournier, and hereby petitions this Court pursuant to Title 28 U.S.C. §1441 for removal of the above-titled cause to the United States District Court for the Eastern District of Michigan, Southern Division, for the following reasons:

1.      On June 1, 2021, Plaintiff Richard Maierle filed his Complaint in the Macomb County Circuit Court, which was designated Case No. No. 21-001895-CD and is now pending in that court. (**Exhibit A**, Complaint). Further, Plaintiff's Complaint was predicated partially upon the Age Discrimination in Employment Act of 1967 (ADEA) alleging that the Defendants discriminated against the Plaintiff because of his age.

2.      Pursuant to the allegations of paragraph 2 of the Plaintiff's Complaint, Richard Maierle is a Michigan resident of Macomb County, Michigan.

3.      Pursuant to the allegations of paragraph 3 of the Plaintiff's Complaint, Charter Township of Clinton is a public corporate body located within the County of Macomb, State of Michigan.

4.      Pursuant to the allegations of paragraph 10 of the Plaintiff's Complaint, Clinton Township Fire and Police Retirement System Board of Trustees is a public corporate body created and charged with the general powers and duties provided under the provisions of the  Fire Fighters and Police Officers Retirement Act, MCR § 38.551, et. seq., as amended.

5.     Pursuant to the allegations of Paragraph 7 of the Plaintiff's Complaint, Robert Cannon is the Supervisor of Clinton Township and is a resident of the Charter Township of Clinton, County of Macomb and State of Michigan.

6.     That the above-entitled action is a civil action wherein the Plaintiff is claiming a violation of Age Discrimination Act in Employment of 1967.

7.     That this Court has original jurisdiction of the above-entitled cause pursuant to 28 U.S.C. §1331 and this action may therefore be removed to this Court pursuant to 28 U.S.C. §1441, *et. seq* because of the Plaintiff's ADEA claim.

8.     That this Honorable Court has supplemental jurisdiction over the Plaintiff's ELCRA claim under 28 U.S. Code § 1367.

9.     This Notice is being filed with this Court within thirty (30) days after service of the Summons and Complaint upon Defendants, Charter Township of Clinton, Robert Cannon and Clinton Township Fire and Police Retirement System Board of Trustees, in the above-entitled action.

10.     Written notice of filing this Petition of Removal and Notice of Removal has been sent to all parties.

11.     A copy of the Notice of Removal has been filed with the Clerk of the Court for the Circuit Court for the County of Macomb, State of Michigan.

WHEREFORE, Defendants respectfully request that they may affect removal of the within action from the Circuit Court for the County of Macomb, State of Michigan to the United States District Court for the Eastern District of Michigan, Southern Division.

Respectfully submitted,

SHIFMAN FOURNIER

By: _____

HOWARD L. SHIFMAN (P27040)
BRANDON FOURNIER (P76968)
Attorneys for Defendants Township and Cannon
31600 Telegraph Road, Suite 100
Bingham Farms, MI  48025
hshifman@shifmanfournier.com
bfournier@shifmanfournier.com

VANOVERBEKE, MICHAUD & TIMMONY, P.C.

By: *Michael Van Overbeke w/permission*

Michael VanOverbeke (P42641)
Attorney for Defendant Clinton Township Fire
And Police Retirement System Board of Trustees
79 Alfred Street
Detroit, MI 48207
313.578.1200
mvanoverbeke@vmtlaw.com

Dated:  June 30, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2021, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:  Sam Morgan; and I hereby certify that I have mailed by United States Postal Service the foregoing paper to the following non-ECF participants: N/A.

FILED by Macomb County Circuit Court
6/1/2021

2021-001895-CD
MAIERLE, RICHARD

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

RICHARD MAIERLE,

      Plaintiff,

vs.

CHARTER TOWNSHIP OF CLINTON,
SUPERVISOR ROBERT CANNON, and
the CLINTON TOWNSHIP FIRE AND
POLICE RETIREMENT SYSTEM BOARD
OF TRUSTEES, Jointly and Severally,

      Defendants.

Hon.

Case No. 21- 001895 -CD
      RICHARD CARETTI

---

**GASIOREK, MORGAN, GRECO,
McCAULEY & KOTZIAN, P.C.**
By: SAM MORGAN (P36694)
    ANGELA M. MANNARINO (P72374)
Attorneys for Plaintiff
30500 Northwestern Highway, Suite 425
Farmington Hills, MI 48334
(248) 865-0001 / (248) 865-0002 (fax)
smorgan@work-lawyers.com
amannarino@work-lawyers.com

---

A civil action between these parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in the Macomb County Circuit Court, where it was given case number 2021-000056-AS and was assigned to the Hon. Richard L. Caretti. The action remains pending.

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, RICHARD MAIERLE, by and through his attorneys, GASIOREK

MORGAN, and for his Complaint against Defendants, states as follows:

1.    This cause of action asserts claims of age discrimination in violation of the Michigan

Elliott Larsen Civil Rights Act, MCL § 37.2101, *et seq.* (hereinafter referred to as the "ELCRA").

1

2.      Plaintiff Richard Maierle (hereinafter "Maierle") is a resident of the Township of Macomb, County of Macomb, State of Michigan.

3.      Defendant Charter Township of Clinton (hereinafter "Clinton Township") is a public corporate body located within the County of Macomb, State of Michigan.

4.      Clinton Township funds and operates the Clinton Township Police Department.

5.      At all relevant times, Clinton Township has and continues to employ 1 or more employees and is an "employer" as defined by the ELCRA.

6.      At all relevant times, Clinton Township is/was a political subdivision of the State of Michigan and a "person" as defined by the ELCRA.

7.      Defendant Robert Cannon (hereinafter "Cannon") is the Supervisor of Clinton Township and, upon information and belief, is a resident of the Charter Township of Clinton, County of Macomb, State of Michigan.

8.      At all relevant times, Cannon acted as an agent of Clinton Township with respect to his treatment of Maierle and is an "employer" as defined by the ELCRA.

9.      At all relevant times, Cannon is/was an individual and a "person" as defined by the ELCRA.

10.      Defendant Clinton Township Fire and Police Retirement System Board of Trustees (hereinafter the "Pension Board") is a public corporate body created and charged with the general powers and duties provided under the provisions of the Fire Fighters and Police Officers Retirement Act (commonly referred to as "Act 345"), MCR § 38.551, *et. seq.*, as amended.

11.      At all relevant times the Pension Board is legal entity and is/was a "person" as defined by the ELCRA.

2

## JURISDICTION AND VENUE

12.     This Honorable Court has jurisdiction over Maierle's ELCRA claim pursuant to MCL §37.2801.

13.     This Honorable Court has personal jurisdiction over Clinton Township because it located and conducts regular and systematic business activities in the County of Macomb, State of Michigan.

14.     This Court has personal jurisdiction over Defendant Cannon because he resides in and is a citizen of the County of Macomb, State of Michigan.

15.     This Court has personal jurisdiction over Defendant Pension Board because it was duly formed under Act 345 and maintains its principal place of business in the County of Macomb, State of Michigan.

16.     Venue is proper in this judicial circuit pursuant to MCL §37.2801 because Plaintiff and Defendant Cannon resides in, Clinton Township's and the Pension Board's principal places of business are located in, and the discriminatory conduct that is the subject of this cause of action occurred in the County of Macomb, State of Michigan.

## GENERAL ALLEGATIONS

17.     Maierle commenced employment with Clinton Township's Police Department on or about on January 21, 1980 as a police officer.

18.     Maierle's date of birth is May 8, 1956.

19.     Maierle turned 65 years old on May 8, 2021.

### The Collect Bargaining Agreement, and its Incorporation of Act 78, the ADEA and ELCRA, and Act 345

20.     At all relevant times, Maierle was a member of a bargaining unit subject to a Collective Bargaining Agreement (hereinafter "CBA") between Clinton Township and the Clinton Township Police Captains' Association.

3

21.     Pursuant to the Articles 4 and 5 of the CBA, and the Fire Fighters and Police Officers Civil Service Act (commonly referred to as "Act 78"), MCL § 38.501, *et. seq.,* Clinton Township can terminate Maierle's employment only for just cause.

22.     Clinton Township has also established Fire and Police Retirement System (hereinafter "Retirement System") pursuant to Act 345.

23.     Pursuant to Article 8, Section 14 of the CBA, Maierle, as a member of the Clinton Township in the Police Captains' bargaining unit, and is provided pension benefits in accordance with the Act 345 Retirement System.

24.     The purpose of Act 345, as stated in its introductory paragraph, is "to provide for the establishment, maintenance, and administration of a system of pensions and retirements for the benefit of the personnel of fire and police departments employed by cities, villages, or municipalities having full paid members in the departments, and for the spouses and children of the members."

25.     The Pension Board is a five-member board of trustees that is created under the mandate of Act 345, and is vested by Act 345 with the authority and fiduciary responsibility for proper management, operation, and administration for the Retirement System.

26.     Act 345 does not define the terms "retire", "retired", or "retirement".

27.     Section 6(1)(c) of Act 345 (i.e., MCL §38.556(1)(c)) provides that "[a] member who is 65 years of age shall be retired by the retirement board on the first day of the month following attainment of 65 years of age."

28.     Neither the CBA nor Act 345 contain a provision requiring a member to terminate active employment service when he or she attains a certain age.

29.    Neither the CBA nor Act 345 contain a provision requiring a member to terminate active employment service when he or she or must be retired in the Retirement System by the Pension Board.

30.    In fact, Section 6(1)(a) of Act 345 allows a member of the Retirement System to "retire from service" upon reaching age 55, and with 25 or more years of service, and the Pension Board "shall grant the benefits to which the member is entitled under [Act 345], unless the member continues employment.  If the member continues employment, the member's pension shall be deferred with service years of credit until actual retirement.

31.    Also, Section 6(1)(b) of Act 345 provides that "[a] member [of the Retirement System] who is 60 years of age or older shall be retired by the retirement board upon the written application of the legislative body, or board or official provided in the charter of the municipality as head of the department in which the member is employed. Upon retirement, the retirement board shall grant the benefits to which the member is entitled under [Act 345], unless the member continues in employment. If the member continues employment, the member's pension shall be deferred with service years of credit until actual retirement."

32.    The "retirement" provisions in Section 6(1) of Act 345 merely provide that the Pension Board must compute and fix the participant's monthly pension benefit, upon request from the member or the employer, or when the member turns 65-years old, so that it is payable once the participant separates from service of employment.

### The Deferred Retirement Option Plan

33.    The Pension Board is empowered to make rules and regulations necessary to the proper conduct of the business of the Retirement System, subject to Section 6e of Act 345 which directs that "any matter relating to the [Retirement System] applicable to current employees

5

represented by a collective bargaining agent [i.e., a union] is a mandatory subject of bargaining under the Public Employee Relations Act, [MCL § 423.201 to 423.216]."

34.     Through the collective bargaining process, in early 2001, Clinton Township and the Clinton Township Police Captains' Association agreed to permit members of the Captains bargaining unit to voluntarily participate in the Retirement System's Deferred Retirement Option Plan (a "DROP").

35.     Any Captain in the bargaining unit, such as Maierle, could elect to participate in the DROP "at any time after attaining the minimum requirements for a normal retirement /pension, provided [he had] attained fifty (50) years of age."

36.     Maierle elected to participate in the DROP in January 2006, upon reaching 50-years of age and 25-years of service.

37.     Maierle's application to participate in the DROP was approved in April 2006.

38.     The CBA provisions on the DROP provide that:

a.   "Upon commencement of DROP participation, the Participant's DROP Benefit shall be the dollar amount of the member's *monthly pension benefit* computed by using the contractual guidelines and formula(s) that are in effect on the DROP date[,]" "[t]he amount of credited service, multiplier and average final compensation shall be fixed as of the participant's DROP Date[,] and "[i]ncreases in compensation and accrual of additional service during DROP Participation will NOT be factored into the pension benefits of active or former DROP Participants.."

b.   "During participation in the DROP, the Participant continues with full employment status and receives all future promotions and benefit/wage increases.

c.   "The Participant's DROP Benefit shall be credited monthly to the Participant's DROP Account which shall be established within the Defined Benefit Plan of the" Retirement System.

d.   "Once commenced, participation in the DROP program is IRREVOCABLE."

e.   Upon entering the DROP, the member "become[s] a DROP Participant and shall cease to be an active member of the Fire and Police Retirement System."

f.   "The employee's contributions to the Fire and Police Retirement System shall cease as of the Participant's DROP Date…"

6

g. "Upon termination of employment, the retiree shall begin to receive payment(s) from his/her individual DROP Account…" and "shall receive the monthly retirement benefit previously credited to their DROP Account…"

h. "The maximum period for participation in the DROP is five (5) years" and "[t]here is no minimum time period for participation."

i. "There is no requirement that a DROP participant terminate employment at the end of their DROP term[,]" but "[f]ailure to terminate employment at the expiration of the DROP Participation Period shall result in forfeiture of the Participant's *monthly pension benefit* otherwise payable to their DROP Account until termination of employment."

j. DROP Participants are "allowed to maintain money in the DROP account until age 59.5 or upon separation of employment, whichever is later."

k. "The DROP payment(s) are in addition to all other contractual pension benefits."

39.     Upon applying and being approved to participate in the DROP the forms used by Clinton Township and the Retirement System referred to personal and wage history information as "retirement data," Maierle's DROP participant date as the "[d]ate retirement effective," and the DROP as a type of "service retirement," and the monthly benefit to be paid to his DROP account as a "pension."

40.     By electing to participate in the DROP, Maierle was able to retire under the 50-years of age and 25-years of service option described in Section 6(1)(a) of Act 345, build a nest-egg with his monthly pension benefit within the Retirement System, and defer receiving his nest egg and monthly pension benefit until he terminated from employment.

### The Defined Contribution Plan

41.     Through the collective bargaining process Clinton Township and the Clinton Township Police Captains Association also agreed that Clinton Township would create a 401(a) defined contribution plan, which became part of the Retirement System, and that DROP Participants like Maierle would be able to enter the defined contribution plan after the expiration of their five-year DROP participation term.

7

42.     The CBA provides that "[d]uring participation in the defined contribution plan, the participant continues with full employment and receives all future promotions and benefit/wage increases."

43.     After Maierle completed his five-year DROP participation period, in March 2011, he elected to continue active employment and started participating in the 401(a) defined contribution plan.

## Cannon and Clinton Township Terminate Maierle's Employment Because He Has Reached Age 65

44.     Beginning in January 2021, Cannon made comments to Maierle, either directly or through Mr. Smith, expressing the belief that Maierle was required to separate from service of employment upon reaching his 65th birthday.

45.     On April 8, 2021, Cannon formally notified the Pension Board, in writing, that Maierle would attain age 65 on May 8, 2021, and that he believed Act 345 as incorporated by the CBA required that Maierle "shall be mandatorily retired on the first day of the month following his attainment of age sixty-five (65)."

46.     Additionally, Cannon notified the Pension Board that Maierle's "last day of service will be May 31, 2021 with his retirement being effective June 1, 2021."

47.     Also, on April 8, 2021, in addition to providing Maierle with a copy of his aforementioned letter to the Pension Board, Cannon notified Maierle in writing of his "pending mandatory retirement."

48.     On or about April 14, 2021, Maierle, through his counsel, objected to Defendant Cannon's April 8, 2021 notice to Maierle and the Pension Board.

49.     Maierle requested that Cannon clarify what he or Clinton Township intended to occur on May 31, 2021, and more specifically, whether Clinton Township intended to take action to involuntarily terminate his active employment on May 31, 2021.

8

50.    Maierle also pointed out that Act 345 does not require or authorize Clinton Township, Cannon or the Pension Board to terminate his employment at age 65.

51.    Maierle also reminded Cannon and the Township that his monthly retirement benefit from the Clinton Township Fire and Police Retirement System had been computed and fixed since 2006, as the result of his election to participate in the DROP.

52.    Also, on April 14, 2021, through his counsel, Maierle informed the Pension Board, among other things, that he disagreed with Cannon's stated position that Act 345 requires that he separate from employment upon reaching age 65.

53.    Maierle also made reference to a March 15, 2021 letter issued by the Pension Board's attorney, Michael VanOverbeke, which was released by the Pension Board for public consumption during its regularly scheduled monthly meeting on March 16, 2021, and wherein Mr. VanOverbeke opined that the Pension Board "does not have the fiduciary responsibility or the labor authority to intercede in [Clinton] Township's employment relationship with a member, like Captain Maierle," and that "[a] decision regarding a member's continued 'employment' after attainment of age 65 is not within the purview of [the Pension] Board's authority and responsibilities, as assigned by Act 345."

54.    Maierle informed the Pension Board that it appeared that Cannon believed that the Pension Board was responsible to make the decision to terminate his employment when he reached age 65.

55.    Maierle asked the Pension Board to ask Cannon to clarify whether he was asking the Pension Board to terminate Maierle's employment when he reached age-65.

9

**The Pension Board is Helping Cannon and Clinton Township Use the Retirement
System as a Subterfuge to Discharge Maierle from Employment
Because he has Reached Age 65**

56.     On April 20, 2021, the Pension Board met and, among other things, resolved to acknowledge receipt and file the aforementioned April 8, 2021 letter from Cannon, and the April 14, 2021 letter from Maierle's counsel, referred to in paragraphs 45,46 and 52-55, above.

57.     The Pension Board further discussed that Cannon's April 8, 2021 correspondence "serve[s] as notice to the Pension Board that Captain Richard Maierle will attain the age of 65 on May 8, 2021, and to process his retirement in accordance with Act 345."

58.     The Pension Board resolved to send correspondence to Maierle, dated April 16, 2021, notifying him of his mandatory retirement at age 65, and that it would take action at its May 2021 meeting, based on Maierle's birthdate, to grant Maierle's retirement effective June 1, 2021.

59.     The Pension Board minutes reflect that Mr. VanOverbeke, stated that he had not changed his opinion from that offered in the opinion letter that was publicly released by the Pension Board on March 16, 2021, and referred to in paragraph 53, above.

60.     The Pension Board minutes also reflect at Mr. VanOverbeke offered his opinion that "Maierle can't be both a retired person and an employee …[,]" despite the fact that Act 345, the CBA, and Clinton Township's actions and DROP records say or indicate otherwise, as referenced in paragraphs 30-32, 38 a, b, e, f, I and j, 39-40, above.

61.     The Pension Board, however, did not take action at its April 20, 2021 meeting, to terminate or cause Maierle to separate from the employment of Clinton Township.

62.     On April 22, 2021, Maierle received from the Pension Board the April 16, 2021 letter that it resolved at its April 20, 2021 meeting to send Maierle as notice to inform him that:

GASIOREK MORGAN
LAWYERS FOR THE WORKPLACE

30500 NORTHWESTERN HIGHWAY | SUITE 425 | FARMINGTON HILLS | MI 48334

"absent your application for retirement at an earlier date, the Pension Board will consider you retired as of the first day of the month following your attainment of age 65."

63.     The Pension Board's April 16, 2021 letter did not clarify whether it believed or determined that Maierle's employment with Clinton Township had to, or would also, terminate on the date that the Pension Board intended to consider him retired.

64.     On April 27, 2021, Maierle sent the Pension Board a message, responding to the April 16, 2021 Pension Board letter referenced in paragraphs 62-63, and asked the Pension Board "what does it mean when the Board says that it is of the opinion that I 'shall be retired on the first day of the month following attainment of 65 years of age[?]' More specifically, what does the term 'retired' mean?"

65.     Further, Maierle asked the Pension Board to clarify its April 16, 2021 letter as follows: "Are you telling me that you must consider me retired for pension purposes, and will be prepared to start paying my monthly pension benefit, beginning in June 2021 *if* my employment with Clinton Township ends?   Will the Pension Board be waiting for Clinton Township to provide it with notice that my employment service has ended before taking action to pay me my monthly pension benefit?"

66.     The Pension Board did not immediately respond to Maierle's questions, and in fact waited to address his questions until its monthly meeting on May 19, 2021.

67.     Meanwhile, by letter dated April 29, 2021, Cannon notified Maierle that he and Clinton Township believed that the CBA's incorporation of Act 345 in Article 8, Section 14, meant that "service separation is required" of a member who has reached age 65 and has been retired by the Pension Board.

68.     Cannon further informed Maierle that "[o]n June 1, 2021, your employment with Clinton Township shall cease and you shall be separated from service."

69.     Cannon and Clinton Township have provided no reason other than the fact that Maierle has reached age 65, and their interpretation of Section 6(1)(c) of Act 345, as the basis for terminating Maierle's service of employment.

70.     During the Pension Board's May 19, 2021 regularly scheduled monthly meeting the Pension Board, through their counsel, Mr. VanOverbeke, informed Maierle and his counsel that it was his opinion that Section 6(1)(c) of Act 345 and the CBA's incorporation of Act 345 to its Article 8, Section 14, meant that Maierle was required to separate from employment upon being retired by the Pension Board on June 1, 2021.

71.     Mr. VanOverbeke stated further that it was his opinion that if Clinton Township permitted Maierle to continue employment beyond June 1, 2021, such an action would violate Section 6(1)(c) of Act 345.

72.     Mr. VanOverbeke also stated that the Pension Board and the Retirement System "had an interest" in seeing that Maierle separated from service on June 1, 2021, because of the possibility that Maierle's spot in Clinton Township's Police Department payroll would be replaced by a newly hired employee/member who would in turn begin making mandatory contributions to the defined benefit plan through payroll deductions.

73.     By letter from Mr. VanOverbeke dated May 21, 2021, the Pension Board notified Maierle of its position that:

   a.  "Retirement under Act 345 means separation from service with a right to receive a pension benefit[;]"

   b.  "[t]here are no provisions that contemplate continued employment after retirement[;]"

   c.  The sections of Act 345 that refer to employment continuing after retirement and the payment of benefits being deferred until employment terminates "simply contemplate continued employment after retirement eligibility[;]" and

   d.  "Captain Maierle's continued employment beyond age 65 would be in direct violation of Act 345."

12

74.     In his letter, Mr. VanOverbeke stated that "the [Pension] Board looks to [Clinton] Township as his employer, to comply with the law and terminate his employment in the event Captain Maierle attempts to continue his employment" beyond June 1, 2021.

75.     Mr. VanOverbeke raised a concern that Maierle's pending retirement may trigger in-service distributions from the Clinton Township Fire and Police Retirement System when, according to Mr. VanOverbeke, "there are no provisions in the plan that provide for in-service distributions."

76.     Act 345 does not prohibit, and in fact does not address the subject of, in-service distributions, and Internal Revenue Code does not prohibit in-service distributions from a defined benefit pension plan upon the participant attaining age 65.

77.     The Clinton Township Fire and Police Retirement System has not adopted any formal rules or policies that expressly prohibit in-service distributions of pension benefits.

78.     However, as stated in paragraph 38 i and j above, the CBA expressly provides that upon completion of the Drop Participation Period, which for Maierle occurred in 2011, the member forfeits his monthly pension benefit each month that he continues to remain actively employed, and that his monthly pension benefit would not become payable to him again until such time as he "terminated from employment."

79.     Accordingly, any concern about possible in-service distributions, as articulated by Mr. VanOverbeke, are unfounded.

80.     Mr. VanOverbeke has cited no legal authority as support for his opinion that "retirement" under Act 345 simply means "separation from service with a right to receive a pension benefit."

13

**Maierle's Grievance and its Status**

81.    Also on May 21, 2021, Maierle timely initiated a grievance of Cannon and Clinton Township's April 29, 2021 notice of his pending termination of employment on June 1, 2021, and requested that the termination decision be rescinded.

82.    The basis of Maierle's grievance is that the term "retired" in the context of Act 345 means nothing other than the Pension Board's statutory obligation to take action to calculate the member's monthly pension benefit so that it is payable upon the Pension Board receiving notice from the employing municipality that the member has separated from its employ, and that the Pension Board already did that in 2006, when he was approved for and entered the DROP.

83.    Maierle's grievance asserts that the fact that he has reached an age when the Pension Board must retire him in the retirement system is not a just cause for Clinton Township to involuntary terminate his service of employment.

84.    On May 24, 2021, Mr. Smith, on behalf of Clinton Township, notified Maierle that the Township had denied his grievance at Step 3 of the CBA's grievance procedure.

85.    Clinton Township based its denial of Maierle's grievance on the language of Section 6(1)(c) of Act 345, which it says is "plain," was incorporated in the CBA, and mandates that Maierle's "retirement" "occur on June 1, 2021.

86.    Clinton Township also rejected Maierle's grievance claim that characterized the termination of his employment as a termination without just cause in violation of Article 5 of the CBA and Act 78, based on the rationale that its action to terminate Maierle's employment on June 1, 2021 "is not disciplinary[,]" that "Act 78 does not apply[,]" and that "retirement is mandatory at 65" pursuant to Section 6(1)(c) of Act 345.

14

87.    Clinton Township also rejected Maierle's grievance claim that he had been retired in the Retirement System since 2006, when he elected to participate in the DROP, based on the rationale that "[i]n a DROP, you remain an employee. Simply put, you did not retire in 2006…"

88.    Clinton Township also rejected Maierle's grievance because, "[a]s stated by Pension Counsel [referring to Mr. VanOverbeke], Maierle's "continued employment beyond age 65 would be in direct violation of Act 345."

89.    Maierle's grievance now proceeds to Step 4, where he has a choice to either submit demand an Act 78 hearing and decision by the Clinton Township Civil Service Commission, or to proceed with binding arbitration in accordance with the CBA's arbitration procedure at Article 4, section 4.4 of the CBA.

90.    Maierle has notified Clinton Township that he has elected to demand a Civil Service Commission hearing and decision which, according to section 14(1) of Act 78, requires that a "hearing shall be held within a period of 10 days" and that "pending … the decision thereon by the commission, the member shall remain in office."

91.    There is no appellate case law interpreting Section 6(1)(c) of Act 345 since the enactment of the ELCRA in 1977, and the 1986 amendments to the Age Discrimination in Employment Act, which permit municipalities to involuntarily terminate the employment of a fire fighter or police officer based on their age *if* the termination is pursuant to a bona fide retirement plan that is not a subterfuge to evade the purposes either of those enactments. MCL § 37.2202 (1)(a) and (2); 29 U.S.C. § 623(j).

## Complaint for Superintending Control Order

92.    Prior to filing this action, Maierle filed a Complaint for Superintending Control Order in accordance with Section 5 of Act 345, MCL § 38.555, requesting review of the Pension Board actions conspiring with, and/or to aid, abet, incite and/or compel, Clinton Township to

discriminate against Maierle because of his age, and requesting immediate action in the form of an Order finding that:

a. Section 6(1)(C) of Act 345 does not mandate that members of an Act 345 retirement system must terminate from employment upon reaching their 65th birthday;

b. Section 14 of the CBA between Clinton Township and the Clinton Township Police Captains Association does not mandate that members of the Clinton Township Fire and Police Retirement System must terminate from employment upon reaching their 65th birthday;

c. Neither Act 345 nor the CBA between Clinton Township and the Clinton Township Police Captains Association mandate or require that Maierle must terminate from employment as a result of reaching age 65; and

d. Finding that a rule or provision that makes termination of employment mandatory upon an age 65 retirement under the Clinton Township Fire and Police Retirement System must be agreed-upon by Clinton Township and the bargaining units within its Fire and Police departments through the collective bargaining process, in accordance with MCL § 38.556e.

93.     Immediate action by the Court on Maierle's Complaint for Superintending Control Order, as Maierle has requested, will more fairly and effectively inform the Clinton Township Civil Service Commission as it contemplates a decision on Maierle's challenge to the decision to terminate his employment, than the self-serving interpretations of Act 345 by Cannon, Clinton Township and the Pension Board and biased opinions of their respective attorneys.

94.     Immediate action by the Court on Maierle's Complaint for Superintending Control Order, as Maierle has requested, will also facilitate the efficient disposition of this cause of action.

## COUNT I – AGE DISCRIMINATION IN VIOLATION OF
## MICHIGAN'S ELLIOT-LARSEN CIVIL RIGHTS ACT

95.     Maierle repeats and realleges each and every paragraph of this Complaint as though fully set forth herein.

96.     Defendants Cannon and Clinton Township's only reason for terminating Maierle's employment is the fact that Maierle has reached age 65.

16

97.     Defendant Cannon and Clinton Township's decision to terminate Maierle's employment because he is 65-years old constitutes illegal age discrimination in violation of Maierle's civil rights under the Sections 202 (1) (a-b) and (2) of ELCRA, because neither Act 345, the CBA, nor the Retirement System require termination of employment upon an age-65 retirement.

98.     Defendants Cannon, Clinton Township and the Pension Board have acted in concert and otherwise conspired to use, and/or have each attempted to use, the Clinton Township Fire and Police Retirement System as a subterfuge to discriminate against Maierle because of his age, in violation of Section 701(c) of the ELCRA.

99.     The Defendant Pension Board has also engaged in actions to aid, abet, incite and/or compel Defendants Cannon and Clinton Township to discriminate against Maierle because of his age, in violation of Section 701(b) of the ELCRA.

100.    As a direct and proximate result of the age discrimination that is being perpetrated against Maierle by Defendants, his employment has been terminated effective June 1, 2021, and the terms, conditions and privileges of Maierle's employment have otherwise adversely affected.

101.    As a direct and proximate result of the unlawful age discrimination that is being, and has been, perpetrated against Maierle, he has suffered damages including but not limited to the loss of employment and employment opportunities with Defendants, the loss of past and future employment income and fringe benefits, damage to his personal and occupational reputation, humiliation, stress, anxiety, and mental and emotional distress.

WHEREFORE, Plaintiff Richard Maierle respectfully prays this Honorable Court to enter its Judgment in his favor and against Defendants, Clinton Township and Cannon, jointly and

17

severally, for money damages in whatever amount is shown to be established by the evidence, together with interest and taxable costs.

FURTHER, Plaintiff Richard Maierle requests that this Honorable Court award him appropriate injunctive and equitable relief, including but not limited to an Order:

1. Finding that Section 6(1)(C) of Act 345 does not mandate that members of an Act 345 retirement system must terminate from employment upon reaching their 65th birthday;

2. Finding that Article 8, Section 14 of the CBA between Clinton Township and the Clinton Township Police Captains Association does not mandate that members of the Clinton Township Fire and Police Retirement System must terminate from employment upon reaching their 65th birthday;

3. Finding that neither Act 345 nor the CBA between Clinton Township and the Clinton Township Police Captains Association mandate or require that Maierle must terminate from employment as a result of reaching age 65;

4. Finding that a rule or provision that makes termination of employment mandatory upon an age 65 retirement under the Clinton Township Fire and Police Retirement System must be agreed-upon by Clinton Township and the bargaining units within its Fire and Police departments through the collective bargaining process, in accordance with MCL § 38.556e;

5. Rescinding and/or nullifying Cannon and Clinton Township's notices dated April 8, 2021 and April 29, 2021 to the extent that they direct that Maierle's employment shall be terminated on May 31, 2021 or June 1, 2021;

6. Directing Cannon and Clinton Township to refrain from discharging or in any other way involuntarily removing Maierle from his position of employment with the Clinton Township Police Department unless there is cause that justifies such adverse employment action and Cannon and Clinton Township comply fully with Section 14 of Act 78, Articles 5, 7, 14 and 20 of the Collective Bargaining Agreement between Clinton Township and the Clinton Township Police Captains Association, effective April 1, 2018 through March 31, 2023; and

7. Directing Clinton Township to reimburse Maierle for attorneys' fees incurred in pursuing this claim, and any other relief that the Court finds necessary and equitable.

FURTHER, Plaintiff, Richard Maierle requests that the Court award him the costs that he incurs in pursuing this suit, including reasonable attorneys' fees, pursuant to MCL §§37.2801(1) and (3), and such other relief the Court deems equitable.

18

## DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, RICHARD MAIERLE, by and through his attorneys, GASIOREK

MORGAN, and hereby demands a trial by jury of all claims asserted in his Complaint against

Defendants.

Respectfully submitted,

**GASIOREK MORGAN**

BY:   _/s/ Sam Morgan_____
Sam Morgan (P36694)
Attorneys for Plaintiff
30500 Northwestern Highway, Suite 425
Farmington Hills, MI 48334
(248) 865-0001

Dated: June 1, 2021

FILED by Macomb County Circuit Court
6/1/2021

2021-001895-CD
MAIERLE, RICHARD

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

RICHARD MAIERLE,

      Plaintiff,                    Hon.

vs.                                  Case No. 21- 001895 -CD

CHARTER TOWNSHIP OF CLINTON,              RICHARD CARETTI
and SUPERVISOR ROBERT CANNON,
jointly and severally,

      Defendants.

---

**GASIOREK, MORGAN, GRECO,
McCAULEY & KOTZIAN, P.C.**
By: SAM MORGAN (P36694)
    ANGELA M. MANNARINO (P72374)
Attorneys for Plaintiff
30500 Northwestern Highway, Suite 425
Farmington Hills, MI 48334
(248) 865-0001 / (248) 865-0002 (fax)
smorgan@work-lawyers.com
amannarino@work-lawyers.com

---

## DEMAND FOR TRIAL BY JURY

    NOW COMES Plaintiff, RICHARD MAIERLE, by and through his attorneys, GASIOREK

MORGAN, and hereby demands a trial by jury of all claims asserted in his Complaint against

Defendants.

                                 Respectfully submitted,
                                 **GASIOREK MORGAN**

          BY:    */s/ Sam Morgan*
                    Sam Morgan (P36694)
                    Attorneys for Plaintiff
                    30500 Northwestern Highway, Suite 425
                    Farmington Hills, MI 48334
                    (248) 865-0001

Dated: June 1, 2021

1

FILED by Macomb County Circuit Court
6/1/2021 2:57:54 PM
Service, Submitted and File
Approved, SCAO

2021-000056-AS

Original - Court
1st copy - Defendant

2nd copy - Plaintiff
3rd copy - Return

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| 16th  JUDICIAL DISTRICT  JUDICIAL CIRCUIT  COUNTY PROBATE | **SUMMONS** | 21-000056-AS |

**Court address**
40 N. Main Street, Mount Clemens, MI 48043

**Court telephone no.**
586-469-5208

Plaintiff's name(s), address(es), and telephone no(s).
RICHARD MAIERLE

v

Defendant's name(s), address(es), and telephone no(s).
Charles Champagne, Chairman for the Charter Township of
Clinton Fire and Police Retirement System,
Kim Meltzer, Charter Township of Clinton Clerk,
Robert J. Cannon, Supervisor,
40700 Romeo Plank Road, Clinton Township, MI 48038

Plaintiff's attorney, bar no., address, and telephone no.
Sam Morgan (P36694)
30500 Northwestern Hwy., Suite 425
Farmington Hills, MI 48334
(248) 865-0001

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**
☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.
☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**
☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer  pending.

Summons section completed by court clerk.    **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date  6/1/2021 | Expiration date*  8/26/2021 | Court clerk  ANTHONY G. FORLINI |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01  (9/19)  **SUMMONS**                                    MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

| SUMMONS |
| --- |
| Case No. 21-000056-AS |

**PROOF OF SERVICE**

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
| --- | --- | --- |
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:  (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that:  (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
List all documents served with the summons and complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
| --- | --- | --- |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
| --- | --- | --- |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
| --- | --- | --- | --- | --- |
| Incorrect address fee $ | Miles traveled | Fee $ | TOTAL FEE $ | Name (type or print) |
| | | | | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____     Signature: _____
Date                                                    Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

_____ on behalf of _____

Signature

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

**In re: RICHARD MAIERLE**

Case No. 21- 000056 -AS

HON. RICHARD L. CARETTI

**GASIOREK MORGAN**
By: SAM MORGAN (P36694)
    ANGELA M. MANNARINO (P72374)
Attorneys for Plaintiff
30500 Northwestern Highway, Suite 425
Farmington Hills, MI 48334
(248) 865-0001 / (248) 865-0002 (fax)
smorgan@work-lawyers.com
amannarino@work-lawyers.com

There is no other Civil Action arising out of the same transaction or
occurrence as alleged in this complaint, pending in this Court nor has
any such action been previously filed and dismissed after having been
assigned to a judge.

                            /s/Sam Morgan
                            Attorney for Plaintiff

## RICHARD MAIERLE'S VERIFIED COMPLAINT
## FOR SUPERINTENDING CONTROL ORDER AND INJUNCTIVE RELIEF

NOW COMES Plaintiff, RICHARD MAIERLE, by and through his attorneys, GASIOREK

MORGAN, and for his Complaint for Superintending Control Order and Injunctive Relief pursuant

to MCR 3.302 and MCR 3.310 states as follows:

1.      In this action for superintending control pursuant to the Michigan Constitution of

1963, art. 6, §13; MCL §38.555; MCL §600.615; and MCR 3.302, Plaintiff Richard Maierle

(hereinafter "Maierle") requests that this Honorable Court order the Charter Township of

Clinton and the Clinton Township Fire & Police Retirement System, respectively, to perform

their legal duties to under the Fire Fighters and Police Officers Retirement Act, MCL § 38.551

1

*et. seq.,* and to refrain from using the Clinton Township Fire & Police Retirement System as a subterfuge and/or pretext for violating Maierle's contractual and statutory and civil rights.

## INTERESTED PARTIES

2.     Plaintiff Richard Maierle is an individual who resides in the Township of Macomb, County of Macomb, State of Michigan.

3.     Plaintiff is currently employed by the Clinton Township Police Department as command officer in the rank of Captain, and is a member of the Clinton Township Fire & Police Retirement System.

4.     The Charter Township of Clinton (hereinafter "Clinton Township") is a public body corporate located within Macomb County. Clinton Township funds and operates the Clinton Township Police Department.

5.     Clinton Township has an interest in this matter (interested party).

6.     The Board of Trustees for the Charter Township of Clinton (hereinafter "Township Board") is the legislative and governing body for the Charter Township of Clinton.

7.     The Township Board has an interest in this matter (interested party).

8.     Robert J. Cannon is the elected Supervisor of Clinton Township (hereinafter "Cannon").

9.     Cannon has an interest in this matter (interested party).

10.    The Clinton Township Fire & Police Retirement System Board of Trustees (hereinafter "Pension Board") is a five-member board of trustees that is vested with the authority and fiduciary responsibility for proper management, operation, and administration for the Clinton Township Fire & Police Retirement System, which has been established under the provisions of the Fire Fighters and Police Officers Retirement Act (commonly referred to as "Act 345," because it was Act 345 of the Public Acts of the State of Michigan in 1935). MCL §38.551, *et. seq.*

GASJOREK MORGAN
30500 NORTHWESTERN HIGHWAY | SUITE 425 | FARMINGTON HILLS | MI 48334

2

11.    The Pension Board has an interest in this matter (interested party).

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over the Plaintiff and the interested parties pursuant to MCL 600.2051(1) and (4).

13.    This Honorable Court has original jurisdiction over Plaintiff's claims pursuant to Michigan Constitution of 1963, art. 6, §13, MCL §§ 38.555, 600.605 and 600.615, and MCR 3.302, because Plaintiff's seeks a writ of superintending control over Clinton Township, the Township Board, Cannon, and the Pension Board, as a result of each of them violating their clear legal obligations and because Maierle has no adequate legal remedy other than the writ he seeks.

14.    Section 5 of Act 345, i.e., MCL §38.555, specifically provides that the Pension Board is "a quasi-judicial body, and its actions shall be reviewable by writ of certiorari only."

15.    Pursuant to MCR 3.302(C), superintending control orders replaced the common-law "writs of certiorari" when directed to a lower court or tribunal.

16.    For the reasons stated below, there is a need for "immediate action" warranting the entry of an order before an answer is filed, as provided by MCR 3.302(E)(3)(b).

17.    Venue is proper in this Circuit Court pursuant to MCL §§600.1615, 600.1621 and 600.1627 because Clinton Township exercises governmental authority and conducts business in Macomb County, and because the actions of Clinton Township, Cannon and the Pension Board occurred in Macomb County.

## COMMON FACTUAL ALLEGATIONS

18.    Maierle repeats and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein verbatim.

3

### Maierle's employment relationship with the Clinton Township Police Department

19.    Maierle commenced employment with Clinton Township as a police officer on January 21, 1980.

20.    As the result of various promotions through the Clinton Township Fire and Police Civil Service System, Maierle is currently employed by the Clinton Township Police Department as a command officer and holds the rank of Captain.

### The Collect Bargaining Agreement, and its incorporation of Act 78, the ADEA and ELCRA, and Act 345

21.    The terms and conditions of Maierle's employment with Clinton Township are governed by a collective bargaining agreement negotiated and agreed to by Clinton Township and the Clinton Township Police Captains' Association (hereinafter the "CBA"). (Exhibit A)

22.    Clinton Township has also adopted the provisions of the Fire Fighters and Police Officers Civil Service Act (commonly referred to as "Act 78," because it was Act 78 of the Public Acts of the State of Michigan in 1935), MCL §38.501, *et. seq.*

23.    The CBA, at Article 5, entitled "Promotions, Lay-Offs, Suspensions, Discharges & Reinstatements," provides that "[t]he provision[s] of Act 78 of the Public Acts of the State of Michigan for 1935 as amended, are adopted by reference as if fully stated herein."

24.    Section 14 of Act 78 expressly provides that the tenure of an employee like Maierle "shall not be removed, discharged, reduced in rank or pay, suspended, or otherwise punished except for cause…" MCL §38.514.

25.    The CBA, at Article 20, entitled "Termination of Employment," provides that "[a]ny employee who is unable to perform his regular job, is not on leave, and has used all of his or her banked sick days, vacation days, and paid time off, shall not be considered to have any rights of employment and shall be terminated."

4

GASIOREK MORGAN
LAWYERS FOR THE WORKPLACE
30500 NORTHWESTERN HIGHWAY | SUITE 425 | FARMINGTON HILLS | MI 48334

26.     The CBA, at Article 7, entitled "Discrimination," provides an agreement that "[t]here shall be no discrimination against any bargaining unit member by reason of ... age ... or any other characteristic protected by law, including, but not limited to, claims made pursuant to ... the Age Discrimination in Employment Act or any other similar laws, rules, or regulations...."

27.     The Age Discrimination in Employment Act (the "ADEA"), at 29 U.S.C. § 623 (a)(1) provides that "[i]t shall be unlawful for an employer -- ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]"

28.     Similarly, the Elliott-Larsen Civil Rights Act (the "ELCRA"), at MCL § 37.2202(1) provides that "[a]n employer shall not ... discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition or privilege of employment, because of ... age..."

29.     However, the ELCRA "does not prohibit the establishment or implementation of a bona fide retirement policy or system that is not a subterfuge to evade the purposes to the purpose of" the general prohibition against discharging employees because of their age. MCL § 37.2202(2)

30.     The CBA, at Article 8, entitled "Employee Compensation," Section 14, entitled "Retirement," provides that Members of the bargaining unit "shall be provided pension benefits in accord with..." Act 345.

31.     The CBA, at Article 8, Section 14, contains no statement that expressly provides that termination or separation from service of employment is mandatory at any age or upon becoming eligible for or entitled to retirement benefits under the Clinton Township Fire and Police Retirement System.

32.     Article 8, Section 14 A. 1 of the CBA expressly states that "[m]embers of the Collective Bargaining Group shall be entitled to regular retirement benefits with twenty-five (25) years of service with the Clinton Township Police Department, regardless of their age."

### Act 345 Exists to Serve the Interests of Police and Fire Personnel Employed by Municipalities, and their Spouses and Children, Only

33.     The purpose of the Fire Fighters and Police Officers Retirement Act, MCL § 38.551 *et. seq.* (commonly referred to as "Act 345"), as stated in its introduction, is "to provide for the establishment, maintenance, and administration of a system of pensions and retirements for the benefit of the personnel of fire and police departments employed by cities, villages, or municipalities having full paid members in the departments, and for the spouses and children of the members; to provide for the creation of a board of trustees to manage and operate the system; to authorize appropriations and deductions from salaries; to prescribe penalties and provide remedies; and to repeal all acts and parts of acts inconsistent therewith."

34.     Act 345 does not provide a municipal employer like Clinton Township with any rights or obligation to terminate the service of employment of member in the municipality's fire and police retirement system.

35.     Nor does Act 345 exist for the purpose of serving the interest of a municipal employer like Clinton Township's efficiency.

36.     More specifically, Act 345 does not exist to serve a municipal employer like Clinton Township's interest in efficiently maintaining a balanced workforce in its police department.

37.     Additionally, Act 345 does not provide a board of trustees created pursuant to its provisions, like the Pension Board, with the power, authority or responsibility to terminate the service of employment of a member in its retirement system.

6

## Age and Service Retirement Benefits Payable Under Act 345

38.    Act 345, at section 6 (i.e., MCL § 38.556(1)), directs that age and service retirement

benefits "are payable" under the following circumstances:

a. Upon the approval of the legislative body or the electors of the municipality, a member of the retirement system who is under 50-years of age and has 25 or more years of service may leave employment service and receive the full retirement benefits payable throughout the member's life;

b. Without approval of the legislative body or the electors of the municipality, a member of the retirement system who is 50-years of age or older and has 25 or more years of service may leave employment service and receive the full retirement benefits payable throughout the member's life;

c. Upon a written application from a member of the retirement system who is 55-years old or older and has 25 or more years of service as a police officer or fire fighter in the employ of the affected municipality, the member may retire from service, and retirement system's board of trustees shall grant the benefits to which the member is entitled, unless the member continues employment. If the member continues employment, the member's pension shall be deferred with service years of credit until actual retirement;

d. Upon a written application from the legislative body, or board or official provided in the municipality's charter as head of the department in which the member is employed, a member of the retirement system who is 60-years old or older shall be retired by the retirement board, and upon retirement, the retirement board shall grant the benefits to which the member is entitled, unless the member continues employment. If the member continues employment, the member's pension shall be deferred with service years of credit until actual retirement;

e. A member who is 65 years of age shall be retired by the retirement board on the first day of the month following attainment of 65 years of age; and

f. Upon a written application from a member who has 10 or more years of service with the municipality, but who left employment with the municipality with vested retirement benefits before the date on which he or she would have otherwise first become eligible, the retirement shall grant the member the benefits to which the member is entitled on or after the date the member would have been eligible to retire had the member continued in employment, unless the member resumes employment service with the municipality. If the member resumes service, the member's pension shall be deferred with services years of credit until the member actually retires.

39.     Neither Act 345 nor the Internal Revenue Code prohibit in-service distributions (i.e., distribution of pension benefits while still actively employed) from a defined benefit pension plan after the participant in such a plan reaches age 65.

### The Distinction Between Retirement and Termination of Employment

40.     Act 345 does not define the terms "retire," "retired," or "retirement."

41.     Act 345 uses the terms "retire," "retired," and "retirement," and the phrase "termination of employment" and "termination from employment" in different contexts and separately.

42.     Act 345 expressly provides, at Section 2 (1), that the Pension Board has the power and authority to "[m]ake rules and regulations necessary to the proper conduct of the business of the retirement system."

43.     The Pension Board has not enacted or adopted any rules or regulations for the Clinton Township Fire and Police Retirement System that define the terms "retire," "retired," or "retirement," or the phrases "termination of employment" and "termination from employment."

44.     Nor has the Pension Board enacted or adopted any rules or regulations for the Clinton Township Fire and Police Retirement System that authorizes it to terminate the service of employment of a member in its retirement system at any certain age.

45.     The Pension Board has not, in fact, enacted or adopted any rules or regulations for the Clinton Township Fire and Police Retirement System on the subject of age and service retirements.

46.     In fact, the Service Retirement Procedures enacted and maintained by the Pension Board appear to contemplate only the voluntary separation from employment upon an application for an age or service retirement. (Exhibit B)

8

Case 2:21-cv-11539-TGB-APP   ECF No. 1, PageID.40   Filed 07/01/21   Page 40 of 55

47.     Accordingly, by incorporating Act 345 by reference to its Article 8, entitled "Employee Compensation," and Section 14, entitled "Retirement," the CBA does not contain an agreement or requirement that members of the bargaining unit must or shall terminate or separate from service of employment at any certain age.

48.     Nor does the CBA require that members of the bargaining unit must or shall terminate from service of employment when they are retired in the Clinton Township Fire and Police Retirement System.

49.     In fact, as illustrated in paragraph 38, above, Act 345 anticipates situations where a member of a retirement system formed pursuant to its provisions may continue active employment with the municipality after they are retired and approved for pension benefits by the retirement system's board of trustees.

50.     Clinton Township has no provision in its charter, or any duly enacted ordinance or personnel policy, that requires police officers employed by its police department to separate or terminate from service of employment at any particular age or when the Pension Board acts to retire the police officer in the retirement system.

51.     The Township Board has not passed a resolution that purports or attempts to require police officers employed by its police department to separate or terminate from service of employment at any age or when the Pension Board acts to retire the police officer in the retirement system.

52.     While Clinton Township can legally enact a charter provision or ordinance to mandate that a police officer terminate or separate from service of employment at a certain age pursuant to the fire and police Act 345 retirement system, Section 6 e of Act 345 directs that any new rule relating to its retirement system is a mandatory subject of collective bargaining under the Public Employment Relations Act, MCL § 423.1, *et. seq.*

9

53.     Therefore, no new charter provision, ordinance or personnel policy that may implemented by Clinton Township, purporting to mandate termination or separation from service of employment at a certain age, is or can be enforceable unless it is agreed to by the Clinton Township Police Captains' Association through the collective bargaining process. See also, *Pontiac Police Officers Association v. City of Pontiac*, 397 Mich 674 (1976) (*duty to bargain collectively on issues such as wages, compensation, and bargaining unit work, and to perform in accordance with the terms of the collective bargaining agreement, prevail over conflicting provisions of charter provisions and ordinances*).

### The Deferred Retirement Option Plan ("DROP")

54.     On or about March 15, 2006, in accordance with Article 8, section 14 A.7 and APPENDIX C of the CBA, the Pension Board approved Maierle's application to participate in the Deferred Retirement Option Plan, i.e., the DROP.

55.     Upon being approved to participate in the DROP, and in accordance with the CBA:

   a.  Maierle's monthly pension benefit was calculated by the Pension Board using the formula that was in effect on the date his DROP Participation was approved;

   b.  The amount of Maierle's credited service, multiplier and average compensation was fixed by the Pension Board as of the date his DROP Participation was approved;

   c.  Maierle's monthly pension benefit was paid or credited by the Clinton Township Fire & Police Retirement System to a DROP Account for his benefit, as if he had actually retired and separated from service, for a period of 60-months;

   d.  Maierle's DROP Account was thereafter maintained and managed by the Pension Board;

   e.  Maierle became a DROP Participant and ceased being an active member of the Clinton Township Fire and Police Retirement System;

   f.  Maierle's monthly payroll contributions to the Clinton Township Fire and Police Retirement System ceased being made;

GASJOREK MORGAN
LAWYERS FOR THE WORKPLACE
30500 NORTHWESTERN HIGHWAY | SUITE 425 | FARMINGTON HILLS | MI 48334

g. Maierle continued with full employment status and received all promotions and wage and benefit increase to which he was entitled as an active employee in the bargaining unit;

h. Any increases in compensation and accrual of additional service time during Maierle's Drop Participation and employment thereafter were not factored into the calculation of his monthly pension benefit; and

i. While Maierle's compensation as an active employee was factored into the regular contributions that Clinton Township made to the Clinton Township Fire and Police Retirement System, those contributions were not credited to Maierle's Drop Account or factored into the calculation of Maierle's month pension benefit.

56.     In accordance with the CBA, Maierle participated in the DROP for 60-months (the DROP Participation Period), from March 2006 to March 2011.

57.     No additional monthly payments or credits have been made to Maierle's DROP Account since March 2011.

58.     In accordance with the CBA, Maierle was not required to terminate from employment at the end of his DROP Participation Period.

59.     In accordance with the CBA, if Maierle did not terminate from employment at the end of his DROP Participation Period, he forfeited the monthly pension benefit payments that otherwise had become payable (and were paid or credited to his DROP Account during his DROP Participation Period) until such time as he terminated from employment.

60.     In accordance with the CBA, Maierle shall begin to receive the monthly retirement benefit that was previously paid or credited to his DROP Account upon his "termination of employment."

61.     In accordance with the CBA, subject to certain elections he was eligible to make under the DROP, Maierle shall begin to receive payment of funds from his DROP Account "upon termination of employment."

11

## The Defined Contribution Retirement Savings Plan

62.     In accordance with the CBA, if Maierle did not terminate from employment at the end of his DROP participation period, he was allowed to enter a 401(a) defined contribution retirement savings plan that was created by Clinton Township.

63.     Maierle, in fact, did not terminate from employment and started participating in Clinton Township's 401(a) defined contribution retirement savings plan beginning in 2011.

64.     Clinton Township's 401(a) defined contribution retirement savings plan is an employee benefit plan that is maintained by Fidelity Investments and is separate from the Clinton Township Fire and Police Retirement System.

65.     In accordance with the CBA, during Maierle's participation in the Clinton Township 401(a) defined contribution plan, he is and has been entitled to continue with full employment status and to receive all promotions and future promotions and benefit and wage increases.

## Cannon and Clinton Township's Attempt to Use the Clinton Township Fire and Police Retirement System for the Purpose of Terminating Plaintiff's Employment

66.     For months prior to April 8, 2021, Cannon made comments to Maierle, either directly or through William Smith, Clinton Township's Human Resources Director, expressing the belief that Maierle was required to separate from service of employment upon reaching his 65th birthday.

67.     Cannon repeatedly insisted that Act 345 requires his separation from service of employment upon reaching his 65th birthday.

68.     Maierle's date of birth is May 8, 1956.

69.     Maierle reached the age of 65 on May 8, 2021.

70.     Maierle responded by stating his understanding that while Act 345 requires the Pension Board to take action to retire him in the Clinton Township Fire and Police Retirement

System, Act 345 does not require that he separate or terminate from employment service at age 65.

71. On April 8, 2021, Cannon formally notified the Pension Board, in writing, that Maierle would attain age 65 on May 8, 2021, and that he believed Act 345 as incorporated by the CBA required that Maierle "shall be mandatorily retired on the first day of the month following his attainment of age sixty-five (65)." (Exhibit C – Cannon letter to Pension Board, dated 4-8-21)

72. Additionally, Cannon notified the Pension Board that Maierle's "last day of service will be May 31, 2021 with his retirement being effective June 1, 2021." *Id.*

73. Also, on April 8, 2021, in addition to providing Maierle with a copy of his aforementioned letter to the Pension Board, Cannon notified Maierle in writing of his "pending mandatory retirement." (Exhibit D – Cannon letter to Maierle, dated 4-8-21)

74. In response to Cannon's April 8, 2021 letters, Maierle, through counsel, requested that Cannon clarify what he or Clinton Township intended to occur on May 31, 2021, and more specifically, whether Clinton Township intended to take action to involuntarily terminate his active employment on May 31, 2021. (Exhibit E – Morgan letter to Cannon and Clinton Township, dated 4-14-21)

75. Maierle also pointed out that Act 345 does not require or authorize Clinton Township, Cannon or the Pension Board to terminate his employment at age 65.

76. Maierle also reminded Cannon and the Township that his monthly retirement benefit from the Clinton Township Fire and Police Retirement System had been computed and fixed since 2006, as the result of his election to participate in the DROP.

77. Maierle informed Cannon and Clinton Township that the "mandatory retirement" provision in Act 345 simply provides that the Pension Board must do for an age-65 plan participant what it already had done for Maierle 15-years earlier, i.e., compute and fix the

13

participant's monthly pension benefit so that it is payable once the participant separates from service of employment.

78.     Also, on April 14, 2021, through his counsel, Maierle informed the Pension Board, among other things, that he disagreed with Cannon's stated position that Act 345 requires that he separate from employment upon reaching age 65. (Exhibit F - Morgan letter to Pension Board, dated 4-14-21)

79.     Maierle also made reference to a March 15, 2021 letter issued by the Pension Board's attorney, released by the Pension Board for public consumption, and stated that he agreed that the Pension Board "does not have the fiduciary responsibility or the labor authority to intercede in [Clinton] Township's employment relationship with a member, like Captain Maierle," and that "[a] decision regarding a member's continued 'employment' after attainment of age 65 is not within the purview of [the Pension] Board's authority and responsibilities, as assigned by Act 345."

80.     Maierle informed the Pension Board that it appeared that Cannon believed that the Pension Board was responsible to make the decision to terminate his employment when he reached age 65.

81.     Maierle asked the Pension Board to ask Cannon to clarify whether he was asking the Pension Board to terminate Maierle's employment when he reached age-65.

82.     On April 20, 2021, the Pension Board met and, among other things, resolved to acknowledge receipt and file the aforementioned April 8, 2021 letter from Cannon (i.e., Exhibit C) and the April 14, 2021 letter from Maierle's counsel (i.e., Exhibit F). (See, Exhibit G – Pension Board Meeting Minutes, dated April 20, 2021)

83.     The Pension Board further discussed that Cannon's April 8, 2021 correspondence (i.e., Exhibit C) "serve[s] as notice to the Pension Board that Captain Richard Maierle will attain

14

the age of 65 on May 8, 2021, and to process his retirement in accordance with Act 345." (See, Exhibit G)

84.     The Pension Board resolved to send correspondence to Maierle, dated April 16, 2021, notifying him of his mandatory retirement at age 65, and that it would take action at its May 2021 meeting, based on Maierle's birthdate, to grant Maierle's retirement effective June 1, 2021. *Id.*

85.     The Pension Board minutes reflect that its attorney, Mr. Michael VanOverbeke, stated that he had not changed his opinion from that offered in the opinion letter that was publicly released by the Pension Board on March 16, 2021. *Id.*

86.     The Pension Board minutes also reflect at Mr. VanOverbeke offered his opinion that 'Maierle can't be both a retired person and an employee..." *Id.*

87.     The Pension Board, however, did not take action at its April 20, 2021 meeting, to terminate or cause Maierle to separate from the employment of Clinton Township.

**Pension Board Notifies Maierle of its Intent to Retire him**
**on the First Day of the Month Following his Attainment of Age 65**

88.     On April 22, 2021, Maierle received from the Pension Board the April 16, 2021 letter that it resolved at its April 20, 2021 meeting to send Maierle as notice to inform him that: "absent your application for retirement at an earlier date, the Pension Board will consider you retired as of the first day of the month following your attainment of age 65." (Exhibit H).

89.     The Pension Board's April 22, 2021 letter did not clarify whether it believed or determined that Maierle's employment with Clinton Township had to, or would also terminate on the date that the Pension Board intended to consider him retired.

GASIOREK MORGAN
LAWYERS FOR THE EMPLOYEE

30500 NORTHWESTERN HIGHWAY | SUITE 425 | FARMINGTON HILLS | MI 48334

**Cannon and Clinton Township Notifies Maierle that It Believes that**
**"Service Separation is Required" upon Reaching Age 65**

90.     By letter dated April 29, 2021, Cannon notified Maierle that he and Clinton Township believed that the CBA's incorporation of Act 345 in Article 8, Seciton 14, meant that "service separation is required" of a member who has reached age 65 and has been retired by the Pension Board.  (Exhibit I)

91.     Cannon informed Maierle that "[o]n June 1, 2021, your employment with Clinton Township shall cease and you shall be separated from service." *Id.*

92.     Cannon and Clinton Township have provided no reason other than the fact that Maierle has reached age 65, and their interpretation of Section 6(1)(c) of Act 345, as the basis for terminating Maierle's service of employment.

**Maierle has Filed a Grievance Over his Pending Involuntary Termination**
**As Provided Under the Grievance Procedure  in the CBA**

93.     On May 21, 2021, Maierle timely initiated a grievance of Cannon and Clinton Township's April 29, 2021 notice of his pending termination of employment on June 1, 2021, and requested that the termination decision be rescinded.

94.     The basis of Maierle's grievance is that the term "retired" in the context of Act 345 means nothing other than the Pension Board's statutory obligation to take action to calculate the member's monthly pension benefit so that it is payable upon the Pension Board receiving notice from the employing municipality that the member has separated from its employ.

95.     Maierle's grievance asserts that the fact that he has reached an age when the Pension Board must retire him in the retirement system is not a just cause for the involuntary termination of his service of employment.

16

### The Pension Board's Counsel Believes that "Retirement" Under Act 345 Means "Separation from Service with a Right to Receive a Pension"

96.     By letter from their counsel dated May 21, 2021 (Exhibit J), the Pension Board notified Maierle that their counsel, Mr. VanOverbeke, is of the opinion that:

    a.   "Retirement under Act 345 means separation from service with a right to receive a pension benefit[;]"

    b.   "[t]here are no provisions that contemplate continued employment after retirement[;]"

    c.   The sections of Act 345 that refer to employment continuing after retirement and the payment of benefits being deferred until employment terminates "simply contemplate continued employment after retirement eligibility[;]" and

    d.   "Captain Maierle's continued employment beyond age 65 would be in direct violation of Act 345."

97.     In his letter, Mr. VanOverbeke stated that "the [Pension] Board looks to [Clinton] Township as his employer, to comply with the law and terminate his employment in the event Captain Maierle attempts to continue his employment" beyond June 1, 2021.  (Exhibit J)

98.     Mr. VanOverbeke's opinion appears to revolve around concerns that Maierle's pending retirement may trigger in-service distributions from the Clinton Township Fire and Police Retirement System when, according to Mr. VanOverbeke, "there are no provisions in the plan that provide for in-service distributions."

99.     Act 345 does not prohibit, and in fact, does not address the subject of in-service distributions, and Internal Revenue Code does not prohibit in-service distributions from a defined benefit pension plan upon attaining age 65.

100.    The Clinton Township Fire and Police Retirement System has not adopted any formal rules or policies that expressly prohibit in-service distributions of pension benefits.

101.    However, as stated above, the CBA expressly provides that upon completion of the Drop Participation Period in 2011, Maierle has forfeited his monthly pension benefit each

month that he has continued to remain actively employed, and that his monthly pension benefit would not become payable to him again until such time as he "terminated from employment."

102. Therefore, any concern about possible in-service distributions, as articulated by Mr. VanOverbeke, are unfounded.

103. Mr. VanOverbeke has cited no legal authority as support for his opinion that "retirement" under Act 345 simply means "separation from service with a right to receive a pension benefit."

## COUNT I
## PETITION FOR SUPERINTENDING CONTROL ORDER

104. Maierle repeats and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein verbatim.

105. Section 5 of Act 345 expressly provides that the actions of the Pension Board "shall be reviewable by writ of certiorari, only." MCL § 38.555.

106. Writs of certiorari have been replaced by superintending control orders. MCR 2.302(C).

107. There is no appellate case law interpreting Section 6(1)(c) of Act 345 since the enactment of the ELCRA in 1977, and the 1986 amendments to the ADEA, which permit municipalities to involuntarily terminate the employment of a fire fighter or police officer based on their age if the termination is pursuant to a bona fide retirement plan that is not a subterfuge to evade the purposes either the ELCRA or ADEA. MCL § 37.2202 (1)(a) and (2); 29 U.S.C. § 623(j).

108. Among the reasons why Michigan appellate courts have not interpreted Section 6(1)(C) since 1977 are that: (1) only 49 municipalities and counties in Michigan have adopted an Act 345 retirement system (a community has to first vote in favor of adopting Act 345 before the community can adopt an Act 345 pension system); (2) many communities that have adopted

18

Act 345 pension systems have negotiated contractual provisions and retirement system rules that mandate separation from active employment at a certain age *through the collective bargaining process*; and (3) the present situation rarely arises, since fire fighters and police officers tend to retire and separate from active service upon reaching their 25-years of service milestone, well before the reach age 65.

109.    Clinton Township is one of the few municipalities in Michigan that has adopted an Act 345 retirement system but has not negotiated contractual provisions or retirement system rules through the collective bargaining process that establish an age where retirement *and* separation from service of employment is mandatory.

110.    Making matters more complicated is the fact that many municipalities in Michigan who have not adopted Act 345 have long-standing charter or ordinance-based retirement systems for fire fighters and police officers that establish ages where retirement and separation from service of employment is mandatory; and, most all of the leading post-1987 appellate decisions that have reviewed age discrimination claims stemming from mandatory terminations from service involve charter or ordinance-based retirement systems.

111.    For example, in the leading case in the Sixth Circuit Court of Appeals (which happens to be out of Ohio), *Sadie v City of Cleveland*, 718 F 3d 596, 598 (6th Cir 2013), the municipality had a mandatory retirement provision for police and fire department personnel in its code of ordinances dating back to 1960, which provided that "declared [it] to be in the interest of efficiency of the [police department] that members thereof whose status as such has been established pursuant to the Charter, be honorably retired[]" by the Director of Public Safety "as such members attain the age of sixty-five years."

19

112.   Unlike Act 345, the mandatory retirement provision of the Cleveland City Ordinance clearly stated that continued "active duty" after mandatory retirement at age 65 was permitted on a year-to-year basis on the approval of the Director of Public Safety.

113.   Unlike Act 345, which exists in the interest of fire and police employees who are members of the retirement system, their spouses and children, only, the City of Cleveland's retirement plan explicitly provided that it existed "in the interest of [the Police Department's] efficiency." 718 F 3d at 600.

114.   In *Sadie, supra.,* the court rejected the older officers claim that that the retirement plan was a subterfuge to evade the prohibition of age discrimination imposed by the ADEA because police department served "the essential public function of protecting the City's inhabitants"...by "efficiently by maintaining a balanced workforce[,]" and that the police chief's "decision to deny all requests [to continue active service after the mandatory retirement age of 65 was] in furtherance of the stated purpose of the retirement plain – the efficiency of the Department..." *Id.*

115.   Act 345, at section 6e, expressly directs that rule-making in connection with the retirement system applicable to employees represented by a collective bargaining agent "is a mandatory subject of bargaining under" PERA.  MCL § 38.556e.

116.   Therefore, if Cannon or Clinton Township believes that it is necessary to mandate separation from active duty of employment at age 65 or earlier, to create room for the promotion of lower ranked command officers to Captain-level positions (i.e., the furtherance of an efficiency objective), that is a mandatory subject of collective bargaining with the Clinton Township Police Captains' Association.

117.   Likewise, if the Pension Board has a concern about retired retirement system members continuing in active duty, because it theoretically delays the hiring of younger officers

20

and the mandatory wage and matching pension contributions that come with their addition to the payroll, their counsel should be looking to Clinton Township to negotiate a mandatory termination of employment age into the retirement system rules through the collective bargaining process.

118.   Cannon and Clinton Township are violating a clear legal obligation to secure a mandatory termination from employment age through the collective bargaining process by mischaracterizing the Section 6(1)(c) of Act 345's use of the term "retired" and the impact of the Pension Board's action/pending action to retire Maierle in Clinton Township Fire and Police Retirement System on June 1, 2021.

119.   Cannon and Clinton Township are violating a clear legal obligation under MCL § 38.514 by mischaracterizing Section 6(1)(c) of Act 345's use of the term "retired" and using the Pension Board's action/pending action to retire Maierle in the Clinton Township Fire and Police Retirement System on June 1, 2021 as a pretext for a termination without cause.

120.   Cannon and Clinton Township are violating a clear legal obligation under MCL § 37.2202 (1)(a) and (2); 29 U.S.C. § 623(j) by mischaracterizing Section 6(1)(c) of Act 345's use of the term "retired" and using the Pension Board's action/pending action to retire Maierle in the Clinton Township Fire and Police Retirement System on June 1, 2021 as a pretext for age discrimination.

121.   The Cannon, Clinton Township, and the Pension Board are each a "person" as that term is defined in Section 2 of the ELCRA.

122.   Section 701(b) of the ELCRA prohibits a person, such as the Pension Board, from aiding, abetting, inciting, compelling, or coercing another person, such as Cannon and Clinton Township, to engage in an act of age discrimination.

GASIOREK MORGAN

30500 NORTHWESTERN HIGHWAY | SUITE 425 | FARMINGTON HILLS | MI 48334

21

123.    Section 701(c) of the ELCRA prohibits two or more persons, such as Cannon, Clinton Township, and the Pension Board, from conspiring or acting on their own to attempt directly or indirectly to engage in an act of age discrimination.

124.    The Pension Board is violating its clear obligations under MCL§ 37.2701(b) and (c) by acting outside of what it admits are the limits of its authority and responsibilities under Act 345 to aid, abet, incite, compel, and/or coerce Cannon and Clinton Township to discharge Maierle from employment solely because of his age.

125.    MCR 3.302(E)(3)(b) permits a Court to enter an order before an answer is filed "[i]f a need for immediate action is shown."

126.    Clinton Township has served notice on Maierle that his employment will terminate on June 1, 2021.

127.    Without immediate action pursuant to MCR 3.302(E)(3)(b), enjoining Clinton Township from terminating Maierle's employment on June 1, 2021, Maierle will suffer irreputable harm by being deprived of his property right of continuing employment with the Clinton Township Police Department, the rank, status, income and fringe benefits that accompany that employment, and he will be replaced by a younger employee who will be promoted to the rank of Captain and acquire rights under the CBA that will make it difficult if not impracticable for Maierle to be reinstated at a later date.

128.    Without a finding by this Court on the question of whether Section 6(1)(C) of Act 345 mandates members of an Act 345 retirement system to terminate from employment upon reaching their 65th birthday, the arbitrator in the eventual discharge arbitration that will result from Maierle's grievance will have no judicial adjudication or case law to inform and guide his or her findings.

22

**RELIEF REQUESTED**

WHEREFORE, Plaintiff Richard Maierle requests that this Honorable Court enter an Order in the form attached hereto as Exhibit K:

1.     Finding that Section 6(1)(C) of Act 345 does not mandate that members of an Act 345 retirement system must terminate from employment upon reaching their 65th birthday;

2.     Finding that Article 8, Section 14 of the CBA between Clinton Township and the Clinton Township Police Captains Association does not mandate that members of the Clinton Township Fire and Police Retirement System must terminate from employment upon reaching their 65th birthday;

3.     Finding that neither Act 345 nor the CBA between Clinton Township and the Clinton Township Police Captains Association mandate or require that Maierle must terminate from employment as a result of reaching age 65;

4.     Finding that a rule or provision that makes termination of employment mandatory upon an age 65 retirement under the Clinton Township Fire and Police Retirement System must be agreed-upon by Clinton Township and the bargaining units within its Fire and Police departments through the collective bargaining process, in accordance with MCL § 38.556e;

5.     Rescinding and/or nullifying Cannon and Clinton Township's notices dated April 8, 2021 and April 29, 2021 to the extent that they direct that Maierle's employment shall be terminated on May 31, 2021 or June 1, 2021;

6.     Directing Cannon and Clinton Township to refrain from discharging or in any other way involuntarily removing Maierle from his position of employment with the Clinton Township Police Department unless there is cause that justifies such adverse employment action and Cannon and Clinton Township comply fully with Section 14 of Act 78, Articles 5, 7, 14 and 20 of the Collective Bargaining Agreement between Clinton Township and the Clinton Township Police Captains Association, effective April 1, 2018 through March 31, 2023; and

7.     Directing Clinton Township to reimburse Maierle for attorneys' fees incurred in pursuing this claim, and any other relief that the Court finds necessary and equitable.

Respectfully submitted,

**GASIOREK MORGAN**

BY:     */s/ Sam Morgan*
Sam Morgan (P36694)
Attorneys for Plaintiff
30500 Northwestern Highway, Suite 425
Farmington Hills, MI 48334
(248) 865-0001

Dated: May 26, 2021

23

**VERIFICATION**

STATE OF MICHIGAN )
                  )
COUNTY OF MACOMB)

    Richard Maierle, being first duly sworn, declares under the penalties of perjury that he is

the Plaintiff herein, that he has read the foregoing Verified Complaint and knows the contents

thereof are true to the best of his own knowledge and based on a review of the referenced and

attached documents, except to matters stated to be on information and belief or matters of law,

and that as to those matters he believes them to be true.

 

 

                                                        _____
                                                        Richard Maierle

Subscribed and sworn to before me
This _26_ day of May, 2021

_____
Notary Public:
State of: _Michigan_
My commission expires: _8/11/22_

Eileen M. Clogg
Notary Public of Michigan
Wayne County
Expires 08/11/2022
Acting in the County of _Macomb_

24